Mildred L. SCHEPP, as conservator of the Estate of Vaney Bell Stoss, Plaintiff–Appellant,

v.

DeFrances Stoss HESS, William Edward Hess, Charlene Hess Cowe and Raymond Edward Hess, Defendants–Appellees.

No. 67607.

Supreme Court of Oklahoma.

Feb. 21, 1989.

As Corrected March 13, 1989.

J. Gid Bryan, William W. Gorden, Jr., Oklahoma City, for plaintiff-appellant.

Kenneth R. Johnston, Allen, Allen, Johnston & Tack, Chickasha, for defendants-appellees.

OPALA, Vice Chief Justice.

▪ The dispositive issues are: 1) Did the trial court have the authority to vacate its decree and to pronounce a new decision on the merits in response to a timely term-time "motion to reconsider" rested on grounds different from those prescribed by 12 O.S.1981 § 1031[1] as well as on grounds

---

1. The terms of 12 O.S.1981 § 1031, which prescribe the grounds for vacation and modification of judgments or final orders, are:

"The district court shall have power to vacate or modify its own judgments or orders within the times prescribed hereafter:

"First. By granting a new trial for the cause, within the time and in the manner prescribed in Section 653 of this title.

"Second. By a new trial granted in proceedings against defendants constructively summoned, as provided in Section 176 of this title.

"Third. For mistake, neglect or omission of the clerk or irregularity in obtaining a judgment or order.

"Fourth. For fraud, practiced by the successful party, in obtaining the judgment or order.

"Fifth. For erroneous proceedings against an infant, or a person of unsound mind, where the condition of such defendant does not ap-

which may have been available to the movant under 12 O.S.1981 § 651, which motion was filed more than ten but within thirty days of the decree's rendition?[2] and 2) If so, does the trial court's order of vacation that is combined with its new decree on the merits manifest an exercise of sound discretion in that the decision rests on a sufficient cause? We answer both questions in the affirmative.

Appellant, Mildred L. Schepp [Schepp], as conservator for Vaney Bell Stoss' [her mother's] estate, sued to cancel a deed by which the mother—reserving in herself a life estate—conveyed the remainder to Schepp's sister, DeFrances Stoss Hess, one of the appellees [collectively called Hess]. Two months before the deed was executed the mother had sold another parcel of land to a third party. Because Schepp had somehow acquired nearly all of the proceeds from the consummated sale and the mother wished to avoid an uneven division of her property between the two daughters, the remainder was deeded to Hess.

A year later Schepp, with her mother's consent, became conservator of her estate. Less than two weeks after her appointment Schepp instituted this suit for cancellation of the deed based on mutual mistake.[3] She sought to prove that her mother had conveyed the remainder interest to Hess under the mistaken belief Schepp had appropriated to her own use *all the proceeds* from the earlier land sale.

After a bench trial the court found that (a) the mother had executed the deed by mistake, but (b) the evidence was "unclear" on the issue whether Hess knew anything about Schepp's possession of the money derived from the sold land. The court concluded the mother wanted the daughters to share equally in her property and had executed the deed in the mistaken belief that Schepp had intended to keep the funds for her own use.[4]

The deed was cancelled by the trial court's May 22, 1986 decree and Hess moved for "reconsideration" on June 6, 1986. After an evidentiary hearing the court vacated its earlier decision and denied the cancellation relief sought by Schepp's petition, declaring in its new September 30, 1986 decree that the mother's conveyance "shall remain in full force and effect." Ten days later Schepp filed a motion for new trial. Before it was ruled upon, but

pear in the record, nor the error in the proceedings.

"Sixth. For the death of one of the parties before the judgment in the action.

"Seventh. For unavoidable casualty or misfortune, preventing the party from prosecuting or defending.

"Eighth. For errors in a judgment, shown by an infant in twelve (12) months after arriving at full age, as prescribed in Section 700 of this title.

"Ninth. For taking judgments upon warrants of attorney for more than was due to the plaintiff, when the defendant was not summoned or otherwise legally notified of the time and place of taking such judgment."

2. *We treat Hess' "motion to reconsider" as the functional equivalent of a timely term-time motion to vacate.* While a so-called "motion to reconsider" does not exist in the statutory nomenclature for Oklahoma's nisi prius practice and procedure, it may be accepted as a motion to modify, vacate, open or correct a decision, which would invoke the trial court's term-time power under 12 O.S.1981 § 1031.1, *infra* note 6. Although a "motion to reconsider" filed within ten days of a judgment *may also* be considered as a timely new-trial motion that tolls the time to appeal, *Horizons, Inc. v. KEO Leasing Co.,*

Okl., 681 P.2d 757, 759 [1984], when such motion is filed *after* the ten-day period but within thirty days following the decision, *it will not operate to extend the time to appeal from that decision. Pierson v. Canupp,* Okl., 754 P.2d 548, 550 n. 1 [1988]; and *Salyer v. National Trailer Convoy, Inc.,* Okl., 727 P.2d 1361, 1362 [1986]. On the other hand, a timely-filed new-trial motion extends appeal time and, on its denial, the movant can secure *full review* of the adverse judgment and of all proceedings that led to it, if error was properly preserved. See in this connection, *Federal Corporation v. Ind. School Dist., Etc.,* Okl.App., 606 P.2d 1141, 1143–1144 [1980]. By contrast, in an appeal from a *term-time* disposition, the aggrieved movant can obtain *only that review which is coextensive with, but does not reach beyond, the issues fairly comprised within the trial court's response to the § 1031.1 motion. Yery v. Yery,* Okl., 629 P.2d 357, 363 [1981], and *Salyer v. National Trailer Convoy, Inc., supra.*

3. Schepp admitted in her brief on appeal that the "sole issue" raised by her petition for nisi prius relief was whether the mother had conveyed the property to Hess by *mutual mistake.*

4. See *infra* note 24.

within thirty days of the new decree, she lodged this appeal.

The Court of Appeals reversed the September 30 decree; it held that, because Hess' June 6, 1986 motion to reconsider—filed after ten but within thirty days of the May 22, 1986 decision—was rested on grounds *other than* those afforded by 12 O.S.1981 § 1031,[5] the motion was ineffective to invoke the trial court's term-time vacation power under 12 O.S.1981 § 1031.1.[6] The appellate court relied upon our pronouncement in *Minnesota Mining & Manufacturing Co. v. Smith*.[7] There, this court is *perceived*[8] *to have held* that a "motion to reconsider" filed after ten but within thirty days of the trial court's terminal decision *must* be based upon grounds prescribed in § 1031 which are different from those that could have been invoked in a timely new-trial motion under 12 O.S.1981 §§ 651 and 653;[9] failing this, *Minnesota*

appears to have reasoned, the trial court is *powerless* to change its decision, and the term-time motion must be condemned as but an untimely and hence fatally defective quest for a new trial. We now grant certiorari to revisit *Minnesota* and affirm the trial court's September 30 disposition on the merits.

## I.

### HESS' "MOTION TO RECONSIDER" *INVOKED* THE TRIAL COURT'S "TERM–TIME" POWER TO VACATE THE INITIAL DECREE AND TO RENDER ANOTHER ONE IN ITS PLACE

Deeply rooted in the common law is the concept that trial courts retain for a limited period plenary control over their terminal decisions. This power was historically invocable at any time during the term of court in which the judgment was ren-

**5.** For the terms of 12 O.S.1981 § 1031 see *supra* note 1.

**6.** The terms of 12 O.S.1981 § 1031.1 are:
"*Within thirty (30) days after the rendition of a judgment, the court, of its own initiative or on motion of a party, may* correct, open, modify or *vacate the judgment.* The court may prescribe what notice, if any, shall be given." [Emphasis added.]

**7.** Okl., 581 P.2d 31 [1978].

**8.** There has been a great deal of confusion and uncertainty among the bench and bar over *Minnesota's* effect on postjudgment motions and appeal time. See Morgan, Delayed Attacks on Final Judgments, 33 Okla.L.Rev. 45, footnote 3 [1980]; *Knell v. Burnes,* Okl., 645 P.2d 471, 476 n. 14 [1982] (Opala, J., concurring in result); and *Minn. Mining & Mfg. Co. v. Smith, supra* note 7 at 36 (Williams, J., dissenting); see also, Proposed Amendments to the Civil Procedure Code, Comment to § 1001(c), 59 O.B.J. 2908–2909 [1988].

**9.** The terms of 12 O.S.1981 § 651 are:
"A new trial is a reexamination in the same court, of an issue of fact, or of law, either or both, after a verdict by a jury, the approval of the report of a referee, or a decision by the court. *The former verdict, report or decision shall be vacated, and a new trial granted,* on the application of the party aggrieved, *for any of the following causes,* affecting materially the substantial rights of such party:
"First. Irregularity in the proceedings of the court, jury, referee, or prevailing party, or any order of the court or referee, or abuse of

discretion, by which the party was prevented from having a fair trial.
"Second. Misconduct of the jury or prevailing party.
"Third. Accident or surprise, which ordinary prudence could not have guarded against.
"Fourth. Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice.
"Fifth. Error in the assessment of the amount of recovery, whether too large or too small, where the action is upon a contract, or for the injury or detention of property.
"Sixth. That *the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law.*
"Seventh. Newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.
"Eighth. Error of law occurring at the trial, and excepted to by the party making the application.
"Ninth. When, without fault of the complaining party, it becomes impossible to make case made." [Emphasis added.]
The terms of 12 O.S.1981 § 653 are:
"Unless unavoidably prevented, the *application for a new trial,* if made, *must be filed within ten (10) days after the verdict, report or decision is rendered* regardless of whether or not the term has ended, except for the cause of newly-discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial, or impossibility of making a case-made." [Emphasis added.]

dered; the authority hence came to be known as "term-time." Although terms of court have been abolished in Oklahoma,[10] the common-law term-time power survived and came to be *codified* in 12 O.S.1981 § 1031.1;[11] the time limit for invoking this ancient control is now fixed at thirty days from the decision. Once timely invoked, the trial court's term-time power may be exercised after the thirty-day period.[12]

■ The common-law term-time authority, now *statutorily reconfirmed by the terms of § 1031.1*, remains undiminished and may not be abridged by case law. The power so reposed in the trial bench is entirely *unrestricted* either by the §§ 651,[13] 1031 or any other statutory grounds.[14] *Neither* the terms of § 1031.1 *nor* those of its common-law antecedents *restrict the exercise of term-time power to any specific grounds.*[15]

■ Trial judges enjoy plenary term-time control with "a very wide and extended discretion"[16] that has been described as "almost unlimited."[17] While the power to entertain a *new-trial* motion is limited to § 651 grounds, the § 1031.1 term-time power is *coextensive* with the common law and hence remains unfettered by statutory grounds. *Minnesota stands alone in our jurisprudence as a restriction upon the power now codified in § 1031.1.*[18]

■ To the extent *Minnesota* holds that a term-time pursuit for relief, filed more than ten but within thirty days following a judgment's rendition, is ineffective to invoke the trial court's § 1031.1 control unless the motion be based on a § 1031 ground which was unavailable for timely inclusion in a new-trial motion and not invoke any § 651 grounds which could have been pressed by a timely new-trial motion, our pronouncement in that case may no longer be treated as a correct exposition of Oklahoma's declared common law.[19] Today's departure from *Minnesota's* restric-

10. Okl.Sess.L.1969, Ch. 134, § 2.

11. *Orthopedic Clinic v. Jennings*, Okl., 481 P.2d 139, 140–141 [1971]. For the terms of 12 O.S. 1981 § 1031.1 see *supra* note 6.

12. *Southeastern, Inc. v. Doty*, Okl., 481 P.2d 144, 145 [1971] (the court's syllabus ¶ 1), and *Commonwealth Life Ins. Co. v. Avery*, 205 Okl. 274, 237 P.2d 433, 437 [1951]. See also, *Philip Carey Co. v. Vickers*, 38 Okl. 643, 134 P. 851, 853 [1913].

13. *Williams v. Long Bell Lumber Co.*, 203 Okl. 250, 219 P.2d 992 [1950] (the court's syllabus ¶ 4), and *Firemen's Fund Ins. Co. v. Griffin, infra* note 14, 54 P.2d at 1033. For the terms of 12 O.S.1981 § 651 see *supra* note 9.

14. *Reid v. Conklin*, Okl., 354 P.2d 456, 457 [1960]; *In re Baptist General Convention of Oklahoma*, 201 Okl. 215, 203 P.2d 885, 886 [1949]; *Firemen's Fund Ins. Co. v. Griffin*, 176 Okl. 94, 54 P.2d 1032, 1033 [1936]; *Hogan v. Bailey, infra* note 16; *Todd v. Orr*, 44 Okl. 459, 145 P. 393, 395–396 [1914].

15. 12 O.S.1981 § 1031.1, *supra* note 6; *Orthopedic Clinic v. Jennings, supra* note 11 at 140–141; *Philip Carey Co. v. Vickers, supra* note 12, 134 P. at 854; see also, *Jones v. Strain*, Okl.App., 603 P.2d 353, 354–355 [1979].

16. *Hogan v. Bailey*, 27 Okl. 15, 110 P. 890, 891 [1910].

17. *Morgan v. Phillips Petroleum Co.*, 202 Okl. 181, 212 P.2d 663 [1949].

18. For a discussion of the conflict, confusion and uncertainty that followed in the wake of our decision in *Minnesota*, see *Knell v. Burnes, supra* note 8 at 474–476 (Opala, J., concurring in result), and Morgan, Delayed Attacks on Final Judgments, *supra* note 8 at 45.

Today's decision should eliminate a great deal of the confusion generated by *Minnesota* and return us to the earlier practice in which the interplay of new-trial motion with term-time motion was clearly settled and regularized. If, at the time an appeal is brought from judgment or from a denial of new-trial motion, there is pending before the trial court a term-time plea for relief, this court will stay appellate proceedings to await the nisi prius disposition of the term-time motion. If the latter is granted and no appeal follows from this ruling, the appeal from judgment may be dismissed as moot; if, on the other hand, the term-time quest for relief is either granted or denied and an appeal is brought from that decision, then the two appeals—one for review of the judgment and the other from the term-time ruling—will be consolidated for appellate disposition. *Southeastern, Inc. v. Doty, supra* note 12 at 145 (the court's syllabus ¶ 3), and *Orthopedic Clinic v. Jennings, supra* note 11 at 139–140 (the court's syllabus ¶ 2).

19. "A court has full control over its orders or judgments during the term at which they are made, and may, *upon sufficient cause shown, in the exercise of its sound discretion,* amend, correct, revise, supplement, open, or vacate such

tive teaching about the range of grounds available to a § 1031.1 movant who invokes the term-time power more than ten days after judgment shall apply prospectively to this case, all appellate and certiorari cases in progress and to all future cases in which judgment shall have been rendered after the mandate's issuance in this cause.[20]

■ The common law's test in force in this state for measuring the legal correctness of a trial court's response to a timely § 1031.1 plea is *whether sound discretion was exercised upon sufficient cause shown* [21] *to vacate, modify, open or correct the earlier decision, or to refuse the relief sought.* [22] This is the test we apply in this case.

## II.

### THE TRIAL COURT EXERCISED SOUND DISCRETION WHEN IT RENDERED THE VACATION ORDER

Schepp argues that because the original decree is free from legal error and sup-ported by the evidence, the trial court lacked sufficient cause to vacate it. We disagree for two reasons: 1) by vacating the first decision the chancellor corrected a misperception about the proper application of his equitable powers and in so doing cured an error of law and 2) the newly-discovered evidence considered at the postdecree hearing supports the trial court's new decision on the merits.[23]

### A.

■ In the suit to cancel the deed the court found 1) Schepp's mother had executed the instrument in the mistaken belief that Schepp had appropriated to her own use the proceeds from the mother's land sale and 2) the evidence did not support the requisite *mutual* mistake element.[24]

A deed may be cancelled for mutual mis-

judgments. *This was the rule at common law, and it prevails in almost all jurisdictions."* [Emphasis added.] 34 C.J., Judgments, § 436 at 207–208. An impressive string of citations follows this text of the encyclopaedia.

*Oklahoma's pre-Minnesota jurisprudence stands in complete accord with the common law. Morgan v. Phillips Petroleum Co., supra* note 17, 212 P.2d at 663; *Selected Investments Corporation v. Bell,* 201 Okl. 408, 206 P.2d 989 [1949] (the court's syllabus ¶ 1); *Tulsa Exchange Co. v. Kiester,* 199 Okl. 440, 186 P.2d 808, 809 [1947]; *Long v. Hill,* 193 Okl. 463, 145 P.2d 434 [1944] (the court's syllabus); *Montague v. State,* 184 Okl. 574, 89 P.2d 283, 284 [1939] (the court's syllabus ¶ 1); *Jones v. Strain, supra* note 15 at 355–356.

**20.** See in this connection, *Amoco Production v. Corp. Com'n. of Okl.,* Okl.App., 751 P.2d 203, 208 [1986].

**21.** See Oklahoma's pre-*Minnesota* case law cited *supra* note 19.

**22.** There is both similarity and contrast in the exercise of the trial court's power to grant a new trial on a timely motion and in wielding the same authority under term-time control. The grounds for a new-trial quest are *strictly regulated by statute,* 12 O.S.1981 § 651, *supra* note 9. When deciding whether to grant the relief, *the trial court may not arbitrarily substitute its opinion for that of a jury. Aldridge v. Patterson,*

Okl., 276 P.2d 202, 204 [1954], and *Dodson v. Henderson Properties, Inc.,* Okl., 708 P.2d 1064, 1068 [1985]. The common law's *sufficient-cause test* for reviewing an exercise of term-time power, though statutorily unregulated, works similarly as a barrier to an abuse of nisi prius control in derogation of a successful litigant's right to trial by jury.

**23.** The effect of the trial court's vacation order was to substitute another decision on the merits that denied the relief sought by Schepp in her petition for its May 22 decree cancelling the deed.

**24.** The findings made in the May 22 decree cancelling the deed are:
"1. That Mildred Schepp is the conservator for the estate of Vaney Bell Stoss and is holding funds in a conservator's account on behalf of Vaney Bell Stoss;
"2. That Vaney Bell Stoss *executed the deed in question on the mistaken belief that Ms. Schepp had appropriated* [sic] *the money to her own use;*
"3. That *it is unclear whether or not DeFrances Stoss Hess,* William Edward Hess, Charlene Hess or Raymond Edward Hess *knew the money was held separate or knew nothing.* In either event the deed was executed on the belief it had been;
"4. That Vaney Bell Stoss did understand the effect of the deed; but, executed it under a mistaken belief;

take [25] or for unilateral mistake if fraudulent or inequitable conduct by the other party is shown.[26] Because the chancellor initially rested his decree on but a unilateral mistake, his initial findings were, as a matter of law, insufficient as a basis for cancellation relief.

Sufficient cause for vacating a decree under § 1031.1 certainly includes curing errors of law that are fatal to the movant's interest in the outcome of litigation. We therefore hold that the trial court's vacation of the cancellation decree is not reversible. This is so because the earlier decision's findings did not support the relief then granted.

### B.

■ At the hearing on Hess' motion to reconsider the trial court heard additional evidence. According to the testimony, after Schepp had acquired the proceeds from the mother's land sale, she deposited them in a personal bank account in Schepp's name alone. Schepp also withdrew $10,000.00 as a business "loan." About a year later, after Schepp had become conservator, she repaid the borrowed sum and placed it, along with nearly all of the other money, in an account opened expressly for the mother's benefit. This evidence, which shows the degree of Schepp's earlier control over and use of the funds, doubtless convinced the chancellor ultimately that the deed had been executed neither by a mutual nor by a unilateral mistake. We conclude the new evidence provides another legally sound basis for vacating the origi-

nal decree and denying Schepp the relief of cancellation. In sum, it cannot be said that the trial court acted upon an insufficient cause when responding to Hess' term-time plea for relief.

### C.

Lastly, Schepp urges that by having considered the additional evidence when hearing Hess' motion to reconsider, the trial court in effect held an impermissible new trial. Evidentiary hearings on term-time motions do not stand interdicted by case law.[27] Absent any complaint from either party, Hess' term-time motion was heard in conjunction with Schepp's annual accounting as conservator. At the hearing newly-discovered documentary evidence as well as additional testimony were admitted *without objection* to the trial court's use of this evidence in deciding Hess' "reconsideration" quest. The documents were obtained *via* a postdecree order compelling their production.[28] Because Schepp failed timely to object, she waived any errors in all those rulings, if any indeed there were.

### III.

### HESS' RENEWED QUEST FOR DISMISSAL OF SCHEPP'S APPEAL MUST FAIL

Hess previously had moved to dismiss the appeal now before us on certiorari review, arguing that Schepp failed to preserve any error. Hess contended that while Schepp's new-trial motion was timely filed below, it did not allege, with the requi-

"5. That Vaney Bell Stoss wished to have her property divided equally between her daughters." [Emphasis added.]

25. *Bond v. Chalfant,* 201 Okl. 600, 208 P.2d 535, 537 [1949].

26. *Womble v. Mahoney,* Okl., 383 P.2d 26, 29 [1963]; *Maloy v. Smith,* Okl., 341 P.2d 912, 913 [1959] (the court's syllabus ¶ 4); *Ware v. City of Tulsa,* Okl., 312 P.2d 946, 947 [1957] (the court's syllabus ¶ 2); cf. *Cleary Petroleum Corp. v. Harrison,* Okl., 621 P.2d 528, 533 [1980] (A deed may be *reformed* for unilateral mistake when fraud or inequitable conduct by the other party is shown.).

27. See *Whittett v. Payne,* Okl., 367 P.2d 718, 719 [1962]; *Commonwealth Life Ins. Co. v. Avery,*

*supra* note 12, 237 P.2d at 436–437; *Welborn v. Whitney,* 179 Okl. 420, 65 P.2d 971, 973–974 [1937]; *Nichols v. Bonaparte,* 171 Okl. 234, 42 P.2d 866, 866–867 [1935]; *Martin v. Jones,* 111 Okl. 101, 238 P. 458, 459 [1925]; see also, *Jacobsmeyer v. Superior Court,* 132 Cal.App. 42, 22 P.2d 253, 255 [4th Dist.1933]; *Bull v. Leake,* 712 P.2d 745, 748 [Idaho App.1986]; *Foutch v. O'Bryant,* 99 Ill.2d 389, 76 Ill.Dec. 823, 459 N.E. 2d 958, 960 [1984]; *Bartels v. Meyer,* 136 Neb. 274, 285 N.W. 698, 700 [1939]; and *F.C. Crane Co. v. Gosdin,* 94 S.W.2d 221, 223 [Tex.App. 1936].

28. We do not reach here the question whether there was error in compelling discovery during the pendency of the term-time motion. No ob-

site particularity, any of the errors raised on her appeal. This court denied Hess' motion on January 13, 1987. In her brief on the merits of the appeal she reurged to the Court of Appeals her earlier grounds for dismissal.

■ A motion for new trial, which is too vague and general to apprise the trial court meaningfully of the reasons for seeking relief, is *not effective to preserve for review any allegations of error.*[29] Schepp's October 10, 1986 new-trial motion rested on the sole ground that "the verdict, report or decision is not sustained by sufficient evidence, or is contrary to law." Its nonspecific allegations plainly condemn the motion as *fatally defective* to secure corrective relief upon *her main contention* that Hess' quest for "reconsideration" was in law but an untimely and ineffective new-trial motion.

By a court order contained in the appellate record, the trial judge denied Schepp's new-trial motion on October 30; she had *timely filed* her petition-in-error on October 29. The latter date is within 30 days of the September 30 decree now under review. Jurisdiction of this appeal was hence timely invoked.[30] We unmistakably so held by the

terms of our January 13, 1987 order which denied Hess' dismissal motion.[31]

■ This court is not required to consider a renewed dismissal quest based on grounds identical to those on which a prior unsuccessful dismissal effort came to be rested.[32] Hess' motion to dismiss, reurged in her brief on appeal, presents no compelling reasons and fails to tender an argument different from that already submitted in her earlier attempt to bring about this appeal's demise. We hence decline to disturb our prior denial of Hess' dismissal request. On this record Schepp clearly is entitled to the benefit of our previous ruling and cannot be barred from corrective relief by her inefficacious new-trial motion's pendency at the time her petition-in-error was brought in this court.[33]

COURT OF APPEALS' OPINION IS VACATED AND THE TRIAL COURT'S DECREE DENYING CANCELLATION RELIEF TO THE PLAINTIFF IS AFFIRMED.

SIMMS, DOOLIN, KAUGER and SUMMERS, JJ., concur.

ALMA WILSON, J., concurs specially.

HARGRAVE, C.J., and HODGES and LAVENDER, JJ., dissent.

jection was made to this ruling and no argument pressed on this issue in the briefs.

**29.** *Huff v. Huff,* Okl., 687 P.2d 130, 131 n. 1 [1984]; *Winters v. Pierce,* Okl.App., 752 P.2d 838, 839 [1988]; and *Federal Corp. v. Ind. School Dist., Etc.,* Okl.App., 606 P.2d 1141, 1143–1144 [1980].

**30.** See 12 O.S.1981 § 990, *infra,* and 12 O.S. Supp.1984 § 990.1, *infra.*
  The pertinent terms of 12 O.S.1981 § 990 are:
  "*An appeal to the Supreme Court may be commenced* from an appealable disposition of a court or tribunal *by filing with the Clerk of the Supreme Court a petition in error, within thirty (30) days* from the date of the final order or judgment sought to be reviewed. * * *" [Emphasis added.]
  The pertinent terms of 12 O.S.Supp.1984 § 990.1 are:
  "*When a petition in error is timely filed, the Supreme Court shall have jurisdiction of the entire action that is the subject of the appeal. No additional jurisdictional steps shall be necessary to enable the Supreme Court to rule upon any errors made in the trial of the action* which are asserted by any party to the appeal

and involve any other party to the appeal. * * *" [Emphasis added.]

**31.** In support of our order denying Hess' motion to dismiss this appeal we cited to 12 O.S.1981 § 990, *supra* note 30.

**32.** See *State v. District Court of Mayes County,* Okl., 440 P.2d 700, 706 [1968]; *A.A. Murphy, Inc. v. Banfield,* Okl., 363 P.2d 942, 949 [1961]; *Embry v. Villines,* 175 Okl. 552, 53 P.2d 277, 279 [1936]; *Kay County Gas Co. v. Bryant,* 135 Okl. 135, 276 P. 218, 224 [1929]; see also, *Chicago, R. I. & P. R. Co. v. American Airlines, Inc.,* Okl., 408 P.2d 789, 793 [1965]; *Red Eagle v. Cannon,* 198 Okl. 330, 177 P.2d 841, 842 [1947]; *Mount v. Schulte,* 193 Okl. 335, 143 P.2d 424, 426 [1943]; *Sawyer v. Sawyer,* 182 Okl. 348, 77 P.2d 703, 704 [1938].

**33.** Cf. *Sellers v. Oklahoma Pub. Co.,* Okl., 687 P.2d 116, 119 [1984], where although the "motion to reconsider" was treated as an *untimely* new-trial motion and hence ineffective to extend appeal time, this court nonetheless reviewed the judgment's correctness because the petition-in-error was "*filed within 30 days of the final order.*" [Emphasis in original.]

ALMA WILSON, Justice, concurring specially:

Courts of general common-law jurisdiction have control of all judgments, decrees, or other orders, however conclusive in their character, during the term in which they are rendered; and they may set aside, vacate and modify them during such term in the exercise of wide and extended discretion. *Commonwealth Life Ins. Co. v. Avery,* 205 Okl. 274, 237 P.2d 433 (1951). This inherent equitable power of courts over their orders and judgments during the term at which they are rendered arises independently of statutory authority. *Williams v. Long Bell Lumber Co.,* 203 Okl. 250, 219 P.2d 992 (1950); *Selected Investments Corporation v. Bell,* 201 Okl. 408, 206 P.2d 989 (1949). The import of its *codification* at 12 O.S.1981 § 1031.1 is not to abrogate, but rather to *retain* a trial court's inherent control over its own judgments, decrees, or other orders for a period immediately following rendition. Only the applicable period in which a trial court may exercise its control, not its inherent power to act, is effected by the legislative substitution of a period of thirty (30) days after rendition, in lieu of the old vacation in "term time" rule. The statutory codification thus states:

§ 1031.1 Authorization to correct, open, modify or vacate judgments—Time —Notice

Within thirty (30) days after the rendition of a judgment, the court, *of its own initiative or on motion of a party,* may correct, open, modify or vacate the judgment. The court may prescribe what notice, if any, shall be given.

[*Emphasis added.*]

The inherent common-law power of trial courts over their orders and judgments for a period immediately following rendition thereof is not statutorily impaired by § 1031.1. A trial court's power to vacate its own judgments, decrees or other orders remains unfettered when exercised within thirty (30) days following rendition thereof. Our decisions under the old "term time" rule are expressly applicable to the provisions of § 1031.1. *Orthopedic Clinic v. Jennings,* 481 P.2d 139 (Okl.1971). Moreover, the exercise of the trial court's inherent power under § 1031.1, is neither dependent on, nor precluded by, either an application for new trial available under 12 O.S.1981 § 651; or, purely statutorily created grounds enumerated at 12 O.S.1981 § 1031 which provide avenues for vacation during and beyond the thirty day period *in addition* to that codified at § 1031.1. As determined by this Court in *Crider v. First Interstate Bank of California,*[1] to the extent that *Minn. Mining & Mfg. Co. v. Smith,* 581 P.2d 31 (Okl.1978) may be interpreted to the contrary, it is overruled. Inasmuch as a trial court exercising its authority, as expressed by § 1031.1, may do so *"of its own initiative,* or on motion ...", the determination whether to vacate or not is addressed to the sound discretion of the trial court for a period of thirty days immediately following final disposition by judgment, decree or order and will not be reversed on appeal in the absence of a showing of clear abuse of discretion.

---

**1.** No. 61,059, Unpublished opinion of the Oklahoma Supreme Court, July 23, 1985.